1  KAREN P. HEWITT
   United States Attorney
2  RAVEN M. NORRIS
   Assistant U.S. Attorney
3  California State Bar No. 232868
   880 Front Street, Room 6293
4  San Diego, California 92101-8893
   Telephone: (619) 557-7157
5
   Attorneys for the Respondents
6

7

8                    UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10 AKOP KANTRDZHYAN,              )   Case No. 08 cv 0001- LAB (RBB)
                                  )
11            Petitioner,         )   GOVERNMENTS RETURN IN OPPOSITION
                                  )   TO PETITION FOR WRIT OF HABEAS
12     v.                         )   CORPUS
                                  )
13 MICHAEL CHERTOFF, Secretary of the)
   Department of Homeland Security, et al.,)
14                                )
              Respondents.        )
15 _____ )

I

INTRODUCTION

Petitioner, an alien subject to a final order of removal, is seeking release from Department of Homeland Security ("DHS") custody pending efforts to secure his repatriation to Armenia. The petition should be denied because Petitioner cannot demonstrate "good reason to conclude there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas v. Davis, 533 U.S. 678, 701 (2001). His final order of removal was issued on April 2, 2001 but he was released under an order of recognizance because DHS could not obtain travel documents. Since his release in 2001, Petitioner has re-entered DHS custody multiple times as a result of several criminal convictions and has been released under two orders of supervision due to initial unsuccessful efforts to secure removal by local DHS authorities. As a result of Petitioner's repeated violations of his terms of release and unsuccessful local DHS efforts to remove Petitioner, DHS has initiated new efforts at higher levels to secure Petitioner's removal that are likely to succeed. Accordingly, Petitioner cannot demonstrate that his repatriation is not significantly likely in the reasonably foreseeable future, and it would be premature to reach that conclusion before permitting DHS an opportunity to complete its diligent efforts to obtain travel documents from the Armenian consulate.

II

STATEMENT OF FACTS

Petitioner Kantrdzhyan is a native and citizen of Armenia. [Exs. A-C.][1] On August 19, 1992, he was paroled into the United States as a Public Interest Parolee, and on August 23, 1994, he adjusted to lawful permanent resident status. [Id.] On November 10, 1999, Petitioner was convicted of the offense of Burglary in violation of Section 459 of the California Penal Code and sentenced to 365 days in prison. [Id.] Petitioner was also convicted of the offense of Receiving Stolen Property in violation of Section 496 of the California Penal Code and sentenced to 81 days in jail on December 3, 1999. [Id.]

On March 6, 2001, Immigration and Customs Enforcement ("ICE"), an investigative branch of DHS, initiated removal proceedings against Petitioner by issuing a Notice to Appear in removal

---

[1] "Ex." refers to the accompanying true copy of selected documents from Petitioner's DHS "A-File," No. 71 140 115.

proceedings. [Ex. B.] ICE charged Petitioner with deportability pursuant to 8 U.S.C. § 1227 (a)(2)(A)(iii), which provides for the deportation of an alien convicted of and an aggravated felony. [Id.] On March 30, 2001, ICE lodged additional charges under 8 U.S.C. § 1227 (a)(2)(A)(ii), which provides for the deportation of an alien convicted of two or more crimes involving moral turpitude, and under 8 U.S.C. § 1227(a)(2)(C), which provides for the deportation of an alien convicted of certain firearm offenses. [Ex. C.]

On April 2, 2001, after completing the merits hearing, an Immigration Judge ("IJ") ordered Petitioner removed to Armenia. [Ex. D.] Petitioner waived appeal of the decision, thus rendering the removal order final on April 2, 2001.[2/] [Id.] ICE immediately commenced efforts to obtain travel documents from the Armenian Consulate in Los Angeles ("Consulate"). [Exs. E-F.] On June 19, 2001, ICE ordered Petitioner released on an order of recognizance due to unsuccessful efforts to obtain travel documents from the Consulate. [Ex. F.]

On October 27, 2003, Petitioner again came to the attention of ICE while serving a two year and eight month sentence for conviction of Possession of a Firearm by a Felon with four priors in violation of Section 12021(A)(1). [Ex. G.] Accordingly, on November 4, 2003 and upon Petitioner's release from state custody, ICE issued a Notice of Release Revocation to Petitioner for failing to abide by release conditions. [Ex. H.] On January 30, 2004, ICE issued a decision to continue Petitioner's detention. [Ex. I.] After local efforts to secure travel documents from the Consulate were unsuccessful, case jurisdiction was transferred to ICE Headquarters for further review. On March 4, 2004, Headquarters determined that Petitioner should again be released under an order of supervision. [Ex. J.]

On September 29, 2004, less than seven months after Petitioner's second release, Petitioner was convicted of a theft offense in violation section 484e(d) of the California Penal Code and sentenced to 1 year and 4 months in prison. [Ex. K.] Thus, Petitioner once again entered ICE custody after completing his state sentence. However, on October 21, 2005, ICE issued a decision to release Petitioner under the prior 2004 order of supervision because local ICE authorities initially determined

---

[2/] When the IJ orders an alien removed, the order becomes final either when (1) the alien waives appeal at the time the order is rendered, (2) the alien fails to file a notice of appeal within 30 days after the IJ's order or (3) when the Board of Immigration Appeals ("BIA") dismisses the alien's appeal from the IJ's decision. See 8 C.F.R. § 1003.39.

1  that it would not be able to obtain travel documents from the Consulate. [Exs. L-M.]

2  Finally, on May 9, 2007, ICE issued a notice of Revocation of Release to Petitioner based on a parole violation by Petitioner on September 9, 2006 that resulted in Petitioner's re-commitment to state custody. [Exs. N-O.] Accordingly, Petitioner entered ICE custody again upon his completion of his state custody sentence on July 16, 2007. The local ICE office in San Diego initiated efforts to obtain travel documents by submitting a copy of Petitioner's Russian passport with an Armenian registration stamp with its travel document request to the Consulate. However, due to communication problems with the Consulate, the local ICE office had trouble obtaining travel documents and referred the case to ICE Headquarters. [Declaration of Officer Yuriy Mikhaylov, copy attached as Ex. Q, ¶ 5-6.]

10  On October 25, 2007, ICE conducted a custody review and determined that Petitioner should remain in custody based on his past convictions, multiple failures to abide by orders of supervision, and ICE Headquarters' current removal efforts. [Exs. P-Q.] Following the local office's referral, ICE Headquarters has engaged in extensive new efforts with the Embassy of Armenia to obtain travel documents for Petitioner. [Ex. Q, ¶ 8-12.]. Accordingly, on February 1, 2008, ICE conducted a custody review and determined that removal was significantly likely within the reasonably foreseeable future. [Ex. S.]

III

ARGUMENT

A.  THE BASIC LAW UNDER ZADVYDAS

Ordinarily, an alien subject to a final order of removal must be removed within 90 days after the removal order becomes final. 8 U.S.C. §§ 1231(a)(1), 1231(a)(3). However, under 8 U.S.C. § 1231(a)(6), aliens such as Petitioner, who are removable under section 1227, can be held beyond the normal 90-day removal period. That section provides:

> An alien ordered removed who is inadmissible under section 1182 [8 U.S.C. § 1182], removable under sections 1227(a)(1)(C), (a)(2), or (a)(4) of this title, or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph 3 [8 U.S.C. § 1231(a)(3)].

In <u>Ma v. Reno</u>, 208 F.3d 815, 821-822 (9th Cir. 2000), the Ninth Circuit held that where a repatriation agreement has not been concluded with the alien's home country, an alien cannot be held

more than 90 days after a final order of removal, but that where a repatriation agreement has been concluded with the home country, section 1231(a)(6) grants the Attorney General the authority to detain a criminal alien for a "reasonable time" beyond the 90-day period specified by section 1231(a)(6), in order to effectuate the alien's removal. Id.

Ma and a related Fifth Circuit case were reviewed by the Supreme Court and the Court's resulting decision in Zadvydas v. Davis, 533 U.S. 678 (2001), has served to alter the circumstances under which the ICE can maintain custody of aliens subject to a final removal order. The Court first noted that "[a]fter entry of a final removal order and during the 90-day removal period, however, aliens must be held in custody. § 1231(a)(2)." 533 U.S. at 683. After the 90-day period, as the Court noted, section 1231(a)(6) provides that the government "may" continue to detain an alien or release the alien under supervision.[3] Id.

"[F]or the sake of uniform administration in the federal courts," the Court held that a six-month period of post-removal detention constitutes a "presumptively reasonable period of detention." Id.; see also Clark v. Martinez, 125 S. Ct. 716, 722 (2005) ("[T]he presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months . . . ."); Lema v. INS, 341 F.3d 853, 856 (9th Cir. 2003). Moreover, release is not automatically mandated after the expiration of the six-month period:

> This six-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, <u>an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future</u>.

Zadvydas, 533 U.S. at 701 (emphasis added); see also Clark, 125 S. Ct. at 722.

---

[3] The Court noted that Section 1231(a)(6) applies:

[T]o certain categories of aliens who have been ordered removed, namely inadmissible aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens removable for certain national security or foreign relations reasons, as well as any alien "who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6) (1994 ed., Supp. V); see also 8 C.F.R. § 241.4(a) (2001). It says that an alien who falls into one of these categories "may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision." 8 U.S.C. § 1231(a)(6) (1994 ed., Supp. V).

533 U.S. at 688-89.

1    Procedurally, after the six-month period has expired, the Court held that the ICE can continue to detain an alien beyond six months, unless the "<u>alien provides good reason to conclude there is no significant likelihood of removal in the reasonably foreseeable future.</u>" 533 U.S. at 701 (emphasis added). As the Ninth Circuit has recently emphasized, "<u>Zadvydas</u> places the burden on the alien to show, after a detention period of six months, that there is 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" Pelich v. INS, 329 F.3d 1057, 1059 (9th Cir. 2003) (quoting <u>Zadvydas</u>, 533 U.S. at 701); <u>see also</u> <u>Xi v. INS</u>, 298 F.3d 832, 840 (9th Cir. 2003). The alien must make such a showing to shift the burden to the Government.

> [O]nce the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.[4]

<u>Zadvydas</u>, 533 U.S. at 701.

Thus, until an alien held in post-removal detention meets the burden of showing that there is "no significant likelihood of removal in the reasonably foreseeable future," the detention is presumptively reasonable and may continue. <u>Id.</u> Only if the prospect of removal is not likely "in the reasonably foreseeable future," should a court hold continued detention unreasonable and no longer authorized by statute. <u>Id.</u> at 699-700.[5]

B.  <u>PETITIONER CANNOT SHOW THAT HIS REMOVAL IS NOT REASONABLY FORESEEABLE</u>

Petitioner has not sustained his burden to demonstrate that his repatriation is not significantly likely in the reasonably foreseeable future. As discussed above, the Supreme Court held that DHS may

---

[4] The Court held that mere absence of an extant or pending repatriation agreement does not establish that "there is no significant likelihood of removal in the reasonably foreseeable future." <u>Zadvydas</u>, 533 U.S. at 702. Rather, in such circumstances, a district court must give "due weight to the likelihood of successful future negotiations." <u>Id.</u>

[5] "Ordinary principles of judicial review in this area recognize primary Executive Branch responsibility." 533 U.S. at 700. Accordingly, in reviewing a determination by the Attorney General that there is a "significant likelihood of removal in the reasonably foreseeable future," a district court "must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." 533 U.S. at 700.

continue to detain an alien for six months beyond the end of the removal period, see 8 U.S.C. § 1231(a))(1), unless the "alien provides good reason to conclude there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas at 701 ("This six-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future"). Once the alien makes such a showing, the burden is on the Government to rebut the showing. Zadvydas, 533 U.S. at 701.

Petitioner does not satisfy his burden by simply pointing out that Petitioner has been in detention for "nearly six months." See Petition at 3. Petitioner entered ICE custody July 16, 2007 and has been detained for about seven months, one month beyond the six month presumptively reasonable standard. Id. Further, as noted in the February 1, 2008 custody determination, ICE continues detain Petitioner because Petitioner's multiple violations of orders of release on supervision counsel against release when his removal is reasonably foreseeable as a result of current removal efforts. See Ex. S. To the extent that the burden has shifted to ICE, ICE Headquarter's recent efforts to obtain travel documents from the Armenia appear likely to succeed and thus Petitioner's removal is reasonably foreseeable.

Local efforts by ICE to obtain travel documents from the Consulate were initially unsuccessful due to communication problems. Ex. Q, ¶ 5. Therefore, in October 2007, the matter was referred to ICE headquarters so that efforts could be made at a higher level of authority. Id. at ¶¶ 5-6. Accordingly, ICE Headquarters re-submitted Petitioner's a copy of his expired passport to the Armenian Consul and was informed that the Ministry of Foreign Affairs in Armenia must approve the issuance of travel documents based on copies of passports. Id. at ¶ 7. The Consul has since submitted the approval request to the Ministry and assured ICE that a response should be received soon. Id. at ¶¶ 8-10. Moreover, the Consul attributed the delay in response to the Armenian Presidential Elections and noted that the government was very busy. Id. at ¶10, Ex. R.

Further, the case at hand does not present the issue that raised significant concern of removability in Ma and Zadvydas. Specifically, Ma involved a petitioner whose removal was prevented by the lack of a repatriation agreement between the United States and the home country. Ma, 208 F.3d at 821. Here, in contrast, the U.S. maintains a repatriation agreement with Armenia and as demonstrated by the

1 attached declaration by Deportation Officer Yuriy Mikhaylov, ICE successfully repatriates almost all Armenians with a Russian passport and Armenian registration stamp. Ex. Q at ¶ 11. Moreover, ICE is engaging in significant efforts to secure Petitioner's removal to Armenia and the Armenian Consul has not denied ICE's most recent requests or indicated that a denial is forthcoming. Ex. Q at ¶¶ 6-11, Ex. R. As noted above, it appears that any difficulty in obtaining the travel documents has been due to initial communication problems with the Consulate and the recent Armenian Presidential Elections. As stated by Deportation Officer Mikhaylov, recent communications with the Armenian Embassy indicate that travel documents will be forthcoming. Ex. Q at ¶ 11-12.

Accordingly, Petitioner has not sustained his burden to demonstrate that his repatriation is not significantly likely in the reasonably foreseeable future, and it would be premature to reach that conclusion before permitting ICE headquarters an opportunity to complete its diligent efforts to obtain travel documents from the Armenia. Given such circumstances, the Court should not conclude that Petitioner's repatriation is not reasonably likely in the near future and should deny Petitioner's request for release or bond hearing. "[E]vidence of progress, albeit slow progress, in negotiating a petitioner's repatriation will satisfy Zadvydas until the petitioner's detention grows unreasonably lengthy." Kim v. Ashcroft, Case No. 02cv1524-J(LAB) (S.D. Cal. June 2, 2003) at 7, attached as Exhibit T. Here, Petitioner's detention cannot be characterized as "unreasonably lengthy" as he has been in custody only a few months beyond the six-month benchmark period set forth in Zadvydas.

IV

CONCLUSION

For the reasons stated above, the Petition should be denied without prejudice.

Dated: February 26, 2008                    Respectfully submitted,

                                            KAREN P. HEWITT
                                            United States Attorney

                                            s/ Raven M. Norris
                                            RAVEN M. NORRIS
                                            Assistant U.S. Attorney
                                            Attorneys for Respondents
                                            Email Raven.Norris@usdoj.gov